Good morning, your honor. May it please the court. My name is Andy Halaby. I'm here for Athene USA Corporation formerly Aviva USA Corporation and Aviva Brands Limited I'd like to reserve five minutes if possible You know how we've set this up don't you I do okay, thank you your honor Taking taking a guess. It's gonna be five. I suppose. We'll see your honor This Is a commercial case It involves a commercial actor Anil Vazirani in his cohorts who Engaged in commercial misconduct with commercial motivations and that commercial misconduct violated the commercial law of this country It violated the Lanham Act Both the anti-cybersquad and Consumer Protection Act in 15 USC 1125 D and The 1125 a general proscription on unfair competition It also violated the the statute 1117 on on infringing a registered trademark The commercial misconduct in this case your honor extended beyond that out in the marketplace the commercial misconduct extended into these proceedings because First mr. Vazirani and his cohorts denied under oath knowledge of substantial portions of the conduct that that my client sued upon and These proceedings and Yet despite all that the trial court entered summary judgment in mr. Vazirani's favor on what we would submit our two flawed grounds The first of these flawed grounds was that mr. Vazirani's conduct wasn't wasn't really commercial at all. It was more in the nature of Expressive complaining but in any event it wasn't commercial and Number two that what mr. Vazirani did Fell within a trademark doctrine recognized in the Ninth Circuit called nominative fair use We would respectfully submit that the district court erred in both of these respects and That if there is a case that this case is more alike than the Bosley Medical case on which the district court relied so heavily that case is a case called DSP T versus Nahum Which was decided by this court in 2010 Now Bosley medical is worth discussing Just to check the box This court in Bosley medical held that there is no commercial use requirement to bring an ACPA claim under 1125 D that aspect of Bosley the district court ignored Bosley medical corporation Versus Kramer ultimately dealt with an aggrieved an aggrieved consumer who was dissatisfied with bodily Bosley medicals hair transplant services and decided to post a website complaining about them Isn't in some ways as a middleman your client in some sense is a consumer Well my client I'm looking at Bosley and and sort of ticket ticking through. How is this case similar to? To Bosley and how is it dissimilar? Okay, and and I know you suggest it doesn't make any difference, but but Let's get to that after we decide if it's similar or not. I think it's strikingly dissimilar your honor because Judge black in Bosley the grabber men of mr. Bosley's action was to complain about the treatment. He'd received in his capacity as a consumer from the company Bosley medical here and Vera and here My question is is it some sense Vazirani a Consumer I mean he's complaining about the treatment. He received that's for sure But isn't in some ways a middle middle man. He's he's also a consumer He's he's actually not your honor He is aggrieved, but but in that respect. He's much more like the ex-employee in the DSPT case his motivations in engaging in the conduct complained of in the complaint and Disposed of on summary judgment were to force the company to take him back To force the company to pay him and the record supports to recruit agents to his company in the meanwhile this point As I recall wasn't as well developed in argument at the district court as perhaps it might have been but I would like to develop It now Mr. Vazirani make sure it let me make sure I understand in Bosley didn't the plaintiff send an email suggesting he might be willing to Settle rather than posting a a posting the website He did he did but but in that case it was his his his status as a pure consumer that insulated him so so Judge black this would be a much harder case if that was all we had to go on in terms of the the threat by Mr. Vazirani to go public if if he didn't get what he asked for But but here critically Mr. Vazirani was in the business of trying to recruit life insurance and annuity sales agents to his Organization because if he did that and they came and worked exclusively with carriers He was authorized to get overrides from and not carriers like Aviva who did not Authorize him to get overrides. He would make more money So our theory of the case did the website offer any goods or services for sale? The web that well the website did what one would expect site offer any goods or services for sale none other than mr. Vazirani's own skill and and commercial credibility to the marketplace as someone who could put his arm around a Group of agents and help them make money if he was their independent marketing organization So if you mean we're there, I'm sorry your honor if you mean so the webs the website didn't offer any goods or services for sale If he didn't say come with come with me and and I'll Be your insurance agent. He didn't say that in those words. He did. However, he did however Send over 2 million emails Linking to this website this commercially confusing website to the very sorts of agents He was trying to attract. How was it commercially confusing? It was commercially confusing. It was gonna think it was really the company Your honor I must respectfully disagree with that especially Especially given the fact that it was designed and there's evidence in the record showing that mr Vazirani thought about including a disclaimer because in his words people aren't that smart and decided now And he may have thought about it, but I looked at what was there and I mean it's got the colors and so forth But it doesn't take very long to figure out. This is not the company pushing its services But it takes some time and that was his design a reasonable jury could how many milliseconds do you think it would take well Your honor, I would ask the court to think about any time and maybe maybe I'm the only one But I will on occasion look at a computer monitor and toggle I'll hit at alt tab to look at different webs websites or do other things while I'm on the phone, for example, and We actually try not to do it during oral arguments. Thank you. Thank you, your honor We actually submit that in today's day and age it's exactly that momentary confusing effect that mr Vazirani was out to accomplish He thought about putting text on his website that labeled what he was doing a self-serving and decided not to He thought about using a mark or a presentation that was less like Aviva's trade dress and he did not What he was up to was a heads. I win tails you lose Approach to his problem, which was to say hey marketplace I'm gonna try to extort Aviva into taking me back which by it, but by the way I mean just the surreality of a position that I can Generate this kind of con commentary and conduct comment about a company so they'll take me back Is itself worth noting but in mr Vazirani's theory all he had to do was make sure agents paid attention Because if the agents paid attention they might come work with him whether he ultimately got what he was after from the company or not Well, that's not customer confusion I mean this started when you were talking about confusion and I have trouble finding confusion out of this No, I understand your honor, but but but in this circuit there is a long time honored powerful Line of case law that recognizes that confusion outside the point of sale Even momentary can and should be actionable under the Lanham Act now There are several cases that we cited in our papers below given the space limitations at the brief We didn't treat them at any length here But there's there's the Rolex case the Carl Storrs case the automotive gold case all of which recognize that trademarks and Trade dress can have value and source identifying and distinguishing Significance even if at the moment of the purchase The consumer knows what's going on in this circuit that kind of temporary seizure of The attention of in his case the agency and life insurance salesmen and saleswomen Was exactly the kind of confusion that is prescribed under the Lanham Act Now I must point out you don't need to get to any of that to conclude That the district court erred on the ACPA claim because on the 1125 D claim we have a number of facts That show that indeed Mr. Vazirani did have that bad faith intent to profit as that construct was crafted by Congress and And given to the courts to enforce beyond his motivations. We have multiple domain names We have falsely registering multiple domain names under the name of an officer of an Aviva subsidiary We have registering more and more domain names while hiding what he's doing and that's in the record and What about finally but Keep in mind that when I'm sure when when the court reviewed the record and saw the extensive statement of facts That Aviva supplied in support of its motion for summary judgment. It saw that that Aviva was forced to Spend a great deal of time effort and money even establishing What mr. Vazirani wouldn't admit which is that these were his expressions? We had to link up the computer programmer to the coffee shop to his assistant, mr. Regan Mr. Regan who said that their objective was to maximize pain on Aviva's end and And and we're here today hearing. Oh, well, this wasn't even really commercial conduct. It was just Expression I suspect the panel is going to hear a little bit about that when mr. Bray Takes the podium, but we would submit that it ought to be a bright line in this case if you're trying to figure out whether this is more a commercial case like DSPT or like Lahode Or more an aggrieved consumer think about the fact that mr. Vazirani Tried vigorously tried vigorously to hide what he was doing He lied about it in his deposition when he was asked He said I don't know anything about Aviva hyphen uncovered comm I don't know anything about inside of Aviva comm and so The Issues in this case in terms of trying to choose between whether this is a commercial case or an expression case Really aren't difficult when viewed in that light now Let me turn to nominate a fair use for a moment if I could Nominate a fair use is of course a doctrine that we see embodied most vividly in light Ninth Circuit cases like new kids on the block Toyota versus to Bari motor sales the theory of the nominate a fair use doctrine is what else are you gonna call it? Okay, but Critical to the nominate a fair use test applying and I would offer as an aside that it It's better thought of not as a test but an exception because if you're in nominative fair use land Then you're not liable Okay, it's it's it's a test that Is is more like an exception to the general likelihood of confusion test? But in this case Mr. Vazirani did Do things to suggest a sponsorship or affiliation with Aviva if only temporarily He did use that color scheme. He did use that font. He did go about trying Trying to get visitors to that website to pay attention, huh? I wants that as mr. McGillivray said in the Sipes declaration So that he could Seize their attention. That is an improper use of the goodwill embodied in Aviva's mark and trade dress and it is actionable under the Lanham Act The the other component of the test and it's closely related is that The mark user do no more than is necessary if If the test is what else would you call it? You don't get to do more than that for purposes of using the bark and here here. Of course, mr. Vazirani did There isn't any legitimate purpose to register 14 domain names instead of one I Don't think mr. Kramer registered more than one. There isn't any legitimate reason to Offer the trade dress cloaked as if it were Aviva There isn't really any reason for him to tout his credentials as to the degree he did on his website again If we think about what the case would look like if for example, mr Vazirani had picked just one domain name and that domain name had been clear that it wasn't Aviva and The website hadn't been cloaked to look like Aviva's that gets into More challenging case perhaps for the plaintiff This isn't that case and we respectfully submit that a reasonable jury could have found in our favor on our claims The last point I'd make and I recognize I'm a little bit over the time reserved Leap ahead to the Arizona pattern of unlawful activity statute We called out in our briefs the analogy between the Arizona statute which says that the court shall not award attorneys fees in Special circumstances the similarity of that statute to the access to Justice Act We cited a couple of good cases in our brief that show that this court is empowered and should and should hold Mr. Vazirani isn't entitled to any attorneys fees under that statute Given his destruction of evidence and the misstatements under oath in this case. Did you make that argument in the district court? I Don't think we invoke the equal justice acts access argument and support I think you may did you cite the first second first circuit case or was it out at that time? I'm sorry, your honor the First Circuit case. I Don't remember whether we cited the First Circuit case We certainly argued that the court lacked the power to grant fees under these special circumstances. Yeah, but you've the First Circuit Says you're right By its analysis and I just wondered what the district court handled it if in fact it was before them I don't remember the timing of it I'll reserve the rest of my time. Thank you They Please the court. Good morning, Your Honors. My name is David Bray. I represent. Mr. Vazirani as well as as two entities Who are the appellants in this case? I will address. Mr. Halleby's argument But I'll also address it in conjunction with our Appeal that this is an exceptional case under the Lanham Act and that judge Tilburg erred in finding that it wasn't First Mr. Halleby says This case did not involve or this case involved commercial speech There was a commercial misconduct commercial motivations with all due respect to mr Halleby three courts have found that both the emails and the websites were non-commercial Los Angeles County Superior Court Found the emails and websites were non-commercial and not only that as to the substantive Content of the websites the Los Angeles County Superior Court dismissed those claims under California's anti-slap statute on appeal the court of appeals in California found that the Website and the emails were non-commercial and of course the lower court below judge Tilburg found that the website and emails were non-commercial What was this case really about? This was about the largest insurance company of the world attempting to stifle Constitutionally protected First Amendment criticism. That's what it was about. How do I know this? I know this because I can read their pleading the first claim for relief or in the prayer for relief the first thing that Aviva asked for is a Permanent injunction prohibiting. Mr. Vazirani from quote making or issuing any commercially disparaging Communication regarding plaintiff and their business associates If I could ask mr. Halleby a question I'd ask him where under the Lanham Act are you entitled to an injunction barring speech? Barring pure speech the other reason I know that this was a lawsuit brought to stifle fully protected First Amendment speech regarding a public figure the largest insurance company in the world Regarding a matter of public interest the business practices of that insurance company putting us fully under New York Times versus Sullivan The other reason I know is just the hyperbole or hyperbole. Sorry of Aviva's pleadings my client. Mr. Vazirani immigrated to the United States in 1980 from India and Became a very successful annuity agent, but to call an immigrant from South Asia a terrorist Declaring war a cyber terrorist all because he puts up a gripe site of a kind Virtually identical to the kind that was Affirmed by this court in Bosley. It seems to me both sides been Characterized a little bit when you say you're gonna try and get pay as much pain as you can I don't think both sides were right on the mark during all of this well Activity I guess your honor I would make fair point, but I guess on your point I would make a distinction between internal communications or internal Thoughts that my client had or what he communicated with the PR firm and then what was actually communicated to Aviva Nothing was ever communicated to Aviva along those lines the Alleged extortion is solely an email from myself or the alleged supposed act of extortion Where I emailed counsel for different parties councils for the Other independent marketing organizations that we were involved in litigation saying we've received documents They don't support what everybody's been telling us as to the reason for mr. Vazirani's Termination we're thinking my client is thinking about publicizing them And we'll do so unless you agree to participate in an early mediation. That's the that's the extent of the alleged extortion But sure there were there are ample things for the people The principles on both sides at the table to to look back and say gee we might have done this differently if cooler heads that prevail, so Well, yeah, anytime you're involved in a series of litigation. Well, it's it actually this is an except We have a litigation all day Sure and you have occasional cases where you're sort of tempted to tell both sides to go to their rooms and I got to say This is one of those cases Well, I'd encourage you not to because there's a larger principle at stake Well, it's not to say there aren't other things for us to decide but when we start getting into They talked about terrorists and so forth. There are things for everybody not to be proud of that's all I'm trying to say and I don't want to Dig any deeper into that. Well when we have to that's not to say there aren't legitimate issues that we need to resolve And I guess again I would make a distinction between What the party said in their pleadings or what the party said to each other before the litigation rather than internal communications? And what Aviva said in its pleading is we wanted permanent injunction To bar. Mr. Vazirani from making disparaging comments regarding us based on the Lanham Act There is no principle no basis in the Lanham Act for that kind of injunction and to me that's evidence that this is Can I turn you to some things that are bothering me absolutely as one-third of the voters on the panel, I absolutely I'm very concerned about This destruction of evidence our adversary system requires people To be honest and straightforward and if they have a smoking gun, they're not supposed to bury it or destroy it The district court made a finding that your client did that and it's sort of traditional thought that you know Those kinds of things have penalties that are involved and so The process is one that seems to me where where that might be a problem for us in this case, for example The first in in the attorneys fees issue the First Circuit has developed an analysis where people that are caught in this destruction of evidence and things like such as that That they they that can prevent them from getting attorneys fees and yet the district court just granted the attorneys fees But maybe maybe the Ninth Circuit needs to take a look at the First Circuit analysis So that if you do evil, you don't get paid for it, you know that that is what the First Circuit is talking about Now, I'm not accusing anybody of anything The other part of that is that I was very struck by the district court saying well, where's your proof? and There's so many there's already some proof of there's been destruction we don't know how much more destruction of evidence there might have been and yet the district court is asking for evidence on on the position So I would like to have you Unless you want to attack the finding of the district court that that there has been destruction of evidence I'd like to know how it plays into this case first on the area of the attorneys fees issue taking in mind The First Circuit case and then secondly on on the summary judgment of asking Where are you prejudiced and I don't know how you'd tell how you're prejudiced to you because you don't know how much evidence has been Destructed so I know this is a very difficult area for you, and I'm not accusing you of anything But it's something that's bothering me on how our opinion should come out. So okay A couple responses to that your honor. We did not appeal the court's spoliation finding Our thinking there was that it's an abusive discretion standard We disagree with it But we did not think that that would be a good use of our time or efforts that we have it We have to deal with it. You have to deal with it in terms of there should be a consequence There was a consequence in this in this case your honor. My client Was sanctioned $125,000 in attorneys fees I would say having to pay that kind of attorneys fees to Aviva in a case that Regardless of any spoliation evidence. This is what judge Stilberg found Is that nothing in that evidence could affect my opinion that any common-sense person looking at this? Would not be confused into thinking that Aviva would sponsor or be affiliated with an anti Aviva site That's the national point when you get down to Arizona, you've got a different okay. Well, then we got the we got the RICO claim again I Would argue that And I'm sorry, I'm not familiar with the First Circuit case. Otherwise, I would argue. Oh, I'm sorry But I would argue with regard to just tell you they make an analysis and they say that yes Okay, I would argue that You know that the Arizona RICO Act had been amended a couple times And one of the reasons it had been amended a couple times was because it was prone to abuse by plaintiffs counsel Every business dispute in Arizona when I first started practicing in the 90s Oftentimes had an ASRAC in Arizona RICO claim and one of the ways they amended it was To include that a defendant could recover attorney's fees if a plaintiff brought a a ill-founded Arizona State RICO claim and I would argue your honor under regardless of Whatever happened vis-a-vis the discovery process. There are no facts that have been developed or could be developed that this The the gripe cited issue in this case was a RICO violation of any kind Well, you want to tie the two together but It seems to me what what? It's not not fair to talk about the First Circuit case. What seems to me the general thing is you can't profit by By mistakes you have to suffer a penalty. Sure. It's the hundred and twenty-five thousand dollars. They had to pay but the Attorney's fees are much larger than that that they have to pay through the Arizona result Yeah, and again, I would say that we've not profited You know, we are going to pay a hundred and twenty-five thousand dollars in attorney's fees that's a significant penalty but Does that make their Arizona RICO claim ever a good RICO claim that they should have been able to move forward with discovery on? No just because and you know, I think what's telling your honor in this case is In addition to the attorney's fees sanction the judge Taylor granted them an adverse inference Instruction and it told them how to use it on summary judgment. They said in responding to summary judgment They must specify how defendants poliation has presented prevented them from disputing specific facts the discovery They have undertaken to obtain those facts and how an inference in their favor would prevent summary judgment as a matter of law They were to do that in their response to our summary judgment motion, and they didn't they didn't I understand And they may be out because of that But I just don't understand how they don't they don't know how much spoilation there's been they just know there's been spoilation and how you know what the The full amount is you don't know and yet the district court says we have to assume that that's all there was But I'm I'm not sure that it's even preserved because they failed to you do what the district judge I think that's correct And the other factual point I would make is that There were millions of email blasts sent to their agents. I mean in terms of confusion They that evidence would be in their possession because all of their agents received the email blast and that's you know out of all the agents They got out all the millions of agents and tens of thousands of licensed Aviva agents. They have one hearsay statement from mr McGilvory that's reported by another person Janet Sipes where You know, he says that it or she says that he told him her it caused him to spell spend additional time Reviewing the website before concluding from its disparaging commentary about Aviva that it likely did not originate with Aviva so You know It's unfortunate. There is a spoilation ruling, but this is perhaps a rare case that It it could not and did not make any difference millions of emails They went out to their agents. They had all the evidence of confusion and Regardless of what was in any you know Other information it doesn't change the fact that this website is a non-commercial Grapesite mr. Halliby admitted to judge black that there are no goods or services offered for sale on this website with regard to the Cyber squatting statute there was never an offer To sell back the domain names to Aviva. There was never any advertising on the site There was never any sales of goods or services on the site And that's what the trial court and the Court of Appeals found in California. That's what the district court found below Yeah, I think what makes this an exceptional case under the Lanham Act is The fact that Aviva was clearly attempting to stifle fully protected First Amendment speech Regarding a public figure about a matter of public interest under New York Times versus Sullivan, and they didn't hide that They didn't hide that in their pleadings. That's the first thing they asked for in the prayer for relief Stop talking bad about us that's what this lawsuit was about and that's what makes an exceptional case and we talked about that and a number of the a Number of authorities that provide for that that where you're vindicating fully protected First Amendment speech You want to set regardless of the parties involved or the conduct of the parties involved? You want to send a message to other Aviva's out there that? You don't file frivolous Lanham Act claims against fully protected First Amendment speech Knowing that most people don't have the fortitude or the wherewithal of mr. Vazirani to fight you to the end So let me ask you this question. Sure Just so you have a chance to respond on on this First Amendment First Circuit case it's it's Called Nazario versus Rodriguez. It's cited at five five four fed third 196 it's a 2009 case and what they hold is is that that there are special circumstances Worrying the denial of a fee if there's outrageous or inexcusable conduct and and so they make an analysis there that you don't get any attorney's fees if you've been involved in that and Of course, you're not in a position to respond to that unless you you want to but it At least is what what's while one circuit is doing this and whether we should adopt the First Circuit is another issue okay, and And I would argue the judge Thielberg found in his discretion that the conduct was sanctionable But I don't believe he necessarily found that it was outrageous and inexcusable that it meant that they make that They make that analysis in the First Circuit thing of how you get to that point Okay, but we don't need to take up your time with that with your honor's permission I'd like to reserve my final three minutes 50 seconds you may Judge Wallace you're right. Nazario is the First Circuit case we cited and I Was more focused on particular Instances of that case which are cited in the following cases cited there. We have the Fellow Agua Bucho who tried to get back into the country for four years and then ultimately sought his fees and was denied because it was special circumstances We think the principle In Nazario is a sound one. And as we advocated in our brief, we think the court should adopt it It is fundamentally unfair and inappropriate for a litigant like mr Vazirani to or the other defendants to be able to recover fees and circumstances where just as you say They really prevented us from knowing the entirety of the truth Take for example the maximize pain text We only found the maximize pain text because we undertook forensic discovery of Mr. Regan's hard drive It wasn't produced voluntarily by anyone and it's that kind of expense and the fees associated with seeking a remedy that That are the are the basis for Judge Teelborg's $126,000 award that award didn't do anything about the harm done to us in terms of proving our case If we're here today on the issue of was this conduct commercial or not? Finding the other evidence in addition to that we already found which tends to show that it was indeed commercially motivated is critically important Well, we know that there was some emails were being You Got any evidence there were some emails that were going out and you found them and they said there weren't any and I take it your argument is that who knows how much more there is And is there a case that analyzes that situation? Not not on all fours with this case, it's a very difficult thing. That's the thing about destruction of evidence our fear is that An order affirming miss this outcome sends the message that if in doubt destroy Because you're going to be better off if you do now in terms of preserving the issue One of the things that the court may notice upon review of the statement of facts filed by met by the defendants in the case Is that the defendant studiously avoided? Ever actually making a statement of fact that would be rebutted by missing evidence Paragraph 16 at re 1604 for example alludes to the first amended complaint and that statement of facts is rife with References to the pleadings and not to what the actual issue is the factual issue in order to avoid our coming back and saying well You destroyed the evidence that would have disproved that nevertheless nevertheless Aviva did invoke the missing evidence repeatedly the court can look at re 1608 1612 1660 we did it not only in explaining in our position on the statement of facts, but in the brief supposing both summary judgment motions, so We think we did invoke it and we too are concerned about that issue Thank you all. Thank you Mr. Bray A few more things Email regarding maximize pain Commercial motivation or a hidden commercial motivation doesn't transform speech into Unprotected commercial speech. That's what this court has held Nissan Motor Corp versus Nissan Computer Corporation If speech is not purely commercial that is if it does more than propose a commercial transaction Then it is titled the full First Amendment protection Negative commentary about Nissan Motor doesn't more than propose and commercial transaction and therefore non-commercial Hidden motivations or what people thought on my side are not relevant. They wouldn't change the result This is a non-commercial grubs great site again as mr Halleby made admitted to judge black no goods or services were offered for sale. It accepted no advertising it generated no revenue You know, let's take this to the but let's spin out a couple to be fair I mean he also acknowledged that or alleged that that your client had a commercial motivation such that by disparaging Aviva and particularly in communicating with other agents, there was something to be gained well, one of the things that Janet Sipes testified to or Provided a declaration or I think this was in her deposition actually was that other agents were not Like mr. Vazirani were not competitors of Aviva they were their customers again making this more like the Bosley site, but the luring them away from Aviva's And that's that's a commercial motivation Aviva doesn't you know Aviva doesn't have Agents under the distribution model. They have their independent marketing organizations that Where one agent like mr. Vazirani or anybody else will sell a number of different insurance products You know, we weren't it's never in any agents best interest to limit the number of products they can sell and whether An agent that's licensed with Aviva would go to mr Vazirani's IMO as opposed to some other IMO doesn't make any difference to Aviva The agent is going to sell what's in the client's best interest and or what gives them the best Commission that's in the client's best interest it's it's it's not competitive and again Commercial even if there was some commercial motivation commercial motivation alone doesn't eviscerate the First Amendment protections Let's say that mr. Vazirani Was devastated by the termination of his Aviva contract and does a willy-moly and commit suicide his wife Tracy decides to honor him I'm gonna put up this gripe site about Aviva just because I want the world to know what happened It's her speech then fully protected by the First Amendment But his isn't because he internally may have had some small hidden commercial motivation. I don't think that's what the law is I'm not sure what that analogy shows. I mean, she's clearly different from him. So sure. She's fully protected I'm not saying he's not fully protected. But but the notion that his his motivation was entirely The classic First Amendment. I want to express my disagreement with this entity Maybe maybe not All I'm saying your honor is under established state case law both by the Supreme Court in this circuit commercial motivation doesn't Render speech commercial speech If there's more and the other interesting thing in this case, you know There's this famous quote from Justice Brandeis that says the remedy to applied for to be applied for speech with which we degree Disagree is more speech not enforced speech That's what their damages were in this case. I didn't even talk about damages. I'm sorry. I'm done, but they want Us to pay for their message to provide the critical framework For what? Mr. Vazirani left out of his speech. That's not trademark damages. That's not trademark confusion Let me ask you a question. I know you've run over time, but it's still bothering me and it's I've been thinking about this case. And so I just I haven't made up my mind on it, but the issues are there When you go in for a motion for summary judgment If you're going to get to trial you've got to show a material fact to dispute So your client Has been found To have spoilation. We don't know how far it is But how do you then level the playing field? If in summary judgment comes along you say we'll show us a fact and dispute When you don't know how many facts there are out there now, maybe they found all of them. I understand but we don't know that so, how do you level the playing field or Do you have to make assumptions that maybe there's something there and we have to go to trial now Federal judges love summary judgment I mean, you know We get this all the time when I started practicing and it was an oddity now most of the cases are going out summary judgment but Considering the finding that he made against your client that there were facts that are have been disposed of. We don't know how many Why is it fair to? Require them to show a material fact and dispute when there's no way they can find out what those facts are Well, I would in brief response to that your honor I would say that judge Tealburg laid out a mechanism for them to do that that they could They could make the exact points that you're making now in response to a motion for summary judgment This is what I think this discovery might have showed. This is what's missing and You think the spoliation comes at issue you raise it in the response and explain how it would have made a difference They didn't do that. They waived it. You think it's waived. I do Okay. Thanks. Thank you Thank both counsel for your helpful arguments. The case just argued is submitted. We're adjourned
judges: Black, Wallace, Clifton